689 F.2d 1286
 Sylvia EVANS, Administrator of the Estate of Andrew Evans,
Deceased, Plaintiff- Appellant, Cross-Appellee,
v.
CITY OF CHICAGO, Clark Burrus and William R. Quinlan,
Defendants-Appellees, Cross-Appellants,
and
Bertha BALARK, Dana Balark, Anne Balark and Dane Balark, by
themselves and for all others similarly situated,
Plaintiffs-Appellants, Cross-Appellees,
v.
CITY OF CHICAGO, a municipal corporation; and Daniel Grim,
as Comptroller of the City of Chicago,
Defendants-Appellees, Cross-Appellants.
 Nos. 81-1150, 81-1344.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1981.
Re-Argued Jan. 6, 1982.
Decided Sept. 27, 1982.
 
 John Bernard Cashion, Chicago, Ill., for plaintiff-appellant, cross-appellee Evans.
 Edward T. Stein, Chicago, Ill., for plaintiffs-appellants, cross-appellees Balark.
 Maureen Kelly, Corp. Counsel, Chicago, Ill., for defendants-appellees, cross-appellants.
 Before SWYGERT and FAIRCHILD, Senior Circuit Judges, and THOMAS, Senior District Judge.*
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 After five days of trial in the Circuit Court of Cook County, Sylvia Evans settled her action against the City of Chicago (City) for the wrongful death of Andrew Evans. On January 30, 1976, the settlement resulted in the entry of a $67,500 judgment against the City.
 
 
 2
 In 1977, Bertha, Dana, Anne, and Dane Balark brought a civil rights action under 42 U.S.C. § 1983 against six City policemen. The parties settled that case. On April 10, 1979, the United States District Court, by stipulation, entered a judgment awarding $4,250 to each of the four Balarks. Ill.Rev.Stat., ch. 85, § 9-102 directs the City to pay tort judgments incurred by its employees while acting within the scope of their employment.
 
 
 3
 After learning that the City would delay paying the judgments for a considerable period, Evans and the Balarks brought separate 42 U.S.C. § 1983 class action suits, which raise constitutional challenges to: (1) the City's practices of (a) delaying payment of tort judgments and (b) paying tort judgments of $1,000 and less before paying larger judgments; and (2) certain Illinois statutes[1] which authorize or reflect the City's practices.I. The City's Practice
 
 
 4
 The City pays tort judgments[2] of $1,000 or less as soon as the judgment holders present proper documents. After paying those judgments, the City applies the remainder of its tort judgment fund to pay all other tort judgments in the chronological order in which the Comptroller's staff has listed them in a bound book, called the "Judgment Record." The Comptroller's staff lists a judgment in the "Judgment Record" upon notification from the Corporation Counsel that all appeals have been completed or waived.[3]
 
 
 5
 In 1977, the waiting period for payment of tort judgments in excess of $1,000 was 36 months. In 1978, the period had increased to 41 months. In July 1979, the City owed $14 million in tort judgments. By September 1979, the waiting period had reached 47 months. The City pays interest at the statutory 6% rate at the time it pays the judgment. See Ill.Rev.Stat., ch. 74, § 3, repealed and recodified, 1981 Ill. Laws 82-280 §§ 19B-101 and 2-1303.
 
 
 6
 The delay in paying judgments resulted from the City's practice of: levying a.$4.5 million tax each year for payment of tort judgments (an amount far less than the amount needed to pay the judgments entered against the City each year); selling tax anticipation notes for 75% of the levy; making the funds from the notes available to pay tort judgments; paying the principal and interest on the notes from the receipts of the tax levy; using the balance of the tax levy receipts to pay tort judgments; and refusing to apply any other revenue to paying tort judgments.
 
 
 7
 Eighty percent (80%)[4] of those who win tort judgments for more than $1,000 against the City sell their judgments. The purchasers buy the judgments at a discount which reflects their forecast of the length of the delay in payment and the difference between the prevailing market interest rates and the statutory interest rates.[5] In February 1976, some assignors discounted their judgments 13%. In 1980, discounts reached 20%. The plaintiffs assert that the discount rate subsequently reached 25%.
 
 II. The District Court's Orders
 
 8
 The district court certified both the Evans and the Balark cases as class actions. The district court's class certifications group original tort judgment holders according to the length of time their judgments remain outstanding. Original tort judgment holders who were not paid before the end of the fiscal year following the fiscal year in which their judgments were entered are in the Evans class.[6] Shorterterm original tort judgment holders comprise the Balark class.[7] Evans v. City of Chicago, 522 F.Supp. 789, 808 (N.D.Ill.1980). The classification does not distinguish between judgments stemming from state law tort claims or federal civil rights claims; nor between judgments against the City alone or against both municipal officers or employees and the City. The court foresaw class members moving to the Evans class from the Balark class if they remained unpaid upon the conclusion of the fiscal year following the fiscal year in which their tort judgments were entered. 522 F.Supp. at 808-809.
 
 
 9
 On January 28, 1981, the district court consolidated the Evans and Balark cases for all future action including appeal. In response to the plaintiffs' motions for partial summary judgment and immediate payment, the district court, on January 28, 1981: (1) directed the City to pay immediately to all unpaid Evans class members their judgments, costs, and unwaived statutory interest (Order, P 8); (2) declared that Ill.Rev.Stat., ch. 85, § 9-104(b) failed to provide adequate procedural safeguards to the plaintiffs and other tort judgment holders and, on its face, violated the Fourteenth Amendment of the United States Constitution (Order, P 4); (3) specified the minimum procedural safeguards constitutionally required before the City may decide to pay tort judgments in ten annual installments as permitted by Ill.Rev.Stat., ch. 85, § 9-104(b) (Order, P 4); (4) enjoined the defendants' practice of paying judgments of $1,000 or less before earlier-entered, larger judgments (Order, P 9); (5) declared the practice and Ill.Rev.Stat., ch. 24, § 8-1-16, to the extent the statute authorized the practice, unconstitutional for denying the plaintiffs equal protection of the laws (Order, PP 5 & 6); (6) reserved the question of attorneys' fees (Order, P 10); and (7) declared the judgment final and appealable pursuant to Fed.R.Civ.P. 54(b) (Order, P 7).
 
 
 10
 The plaintiffs appeal and the defendants cross-appeal from the January 28, 1981 order.[8]
 
 III. The Plaintiffs' Appeal
 
 11
 The plaintiffs argue that the district court erred (1) in not holding Ill.Rev.Stat., ch. 85, § 9-104(a) facially unconstitutional on a motion for summary judgment; and (2) in certifying an impermissibly narrow subclass for immediate payment.
 
 
 12
 A. Constitutionality of Ill.Rev.Stat., ch. 85, § 9-104(a)
 
 
 13
 The plaintiffs argue that Ill.Rev.Stat., ch. 85, § 9-104(a) is unconstitutional on its face because at the moment a judgment is entered Illinois law grants the judgment holder a property right in the judgments; because a taking occurs from the date a judgment is entered against the City until the judgment is satisfied; and because § 9-104(a) permits such takings without providing for a hearing at a meaningful time and in a meaningful manner. The district court, in rendering the decision which it made final under Rule 54(b), did not reach plaintiffs' challenge to the constitutionality of § 9-104(a). Therefore the issue is not before us.
 
 B. Class Definition
 
 14
 The entry of a final judgment under Fed.R.Civ.P. 54(b) allows this court to review the determination of the class found entitled to relief. Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 245 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 443 (3d Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). See also Monarch Asphalt Sales Co. v. Wilshire Oil Co., 511 F.2d 1073, 1077 (10th Cir. 1975) (class action reviewed on Rule 54(b) appeal by litigants denied intervention). But see West v. Capital Federal Savings and Loan Ass'n, 558 F.2d 977, 982 (10th Cir. 1977) (Rule 54(b) final judgment of dismissal against putative class members does not make denial of a class certification appealable by named plaintiffs).
 
 
 15
 The plaintiffs argue that the district court certified an impermissibly narrow subclass for immediate payment. The formula "an impermissibly narrow subclass for immediate payment" invites confusion between the district court's determination that the plaintiffs constitute two distinct appropriate classes, its determination of the relief to which its summary judgment entitled each of the distinct plaintiff classes, and its determination, pursuant to Rule 54(b), that there was no just reason to delay entry of a final judgment granting the immediate payment relief to which its summary judgment entitled one of the plaintiff classes. We review the class determination, but we reject the plaintiffs' attempt to draw within that review the constitutionality of Ill.Rev.Stat., ch. 85, § 9-104(a), an issue not reached in the decision made final under Rule 54(b).
 
 
 16
 The plaintiffs assert that the impermissible narrowness resulted because the court did not include assignees in the classes represented by the named plaintiffs, but did base the subclass determination upon Ill.Rev.Stat., ch. 85, § 9-104(a), a statute which the plaintiffs challenged as facially unconstitutional on a motion for summary judgment. We reject the plaintiffs' contentions.
 
 
 17
 We will overrule a denial of class certification only if the denial constitutes an abuse of the district court's discretion. Adashunas v. Negley, 626 F.2d 600, 605 (7th Cir. 1980). We apply the same standard to determine whether the district court certified an impermissibly narrow class.
 
 1. Exclusion of Assignees From the Classes
 
 18
 None of the individual plaintiffs claim to be assignees. (Tr. 1/26/81 at 22.) An original judgment holder who does not purchase judgments at a discount has no interest which is furthered by delay. But an assignee who regularly purchases judgments at a discount may well have divergent interests. Although such an assignee may well want immediate payment of judgments already acquired, the assignee may balk at ending the systematic delays which make purchasing of judgments at discounts a potentially lucrative business. Furthermore, the district court judged that assignees were more likely than other tort judgment holders to be deemed to have waived their right to immediate payment.
 
 
 19
 In view of the sparse record and the class proponents' burden of showing the appropriateness of the class they propose, see Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976), such considerations present questions of typicality and antagonistic interests sufficient to defeat the plaintiffs' claim that the district court abused its discretion when it declined to include assignees in the class the named plaintiffs represented. Garonzik v. Shearson Hayden Stone, Inc., 574 F.2d 1220, 1221 (5th Cir. 1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979). See General Telephone Co. v. Falcon, --- U.S. ----, ---- n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982).
 
 2. Basing Classes Upon A Challenged Statute
 
 20
 The remainder of the plaintiffs' argument on the class certification is primarily an attempt to prove that Ill.Rev.Stat., ch. 85, § 9-104 is unconstitutional and that consequently the Balark class is entitled to immediate payment. No final judgment determined the constitutionality of that statute or the validity of the Balark class' claim to present payment of their tort judgments. Our review of the district court's class determinations does not render those matters reviewable.
 
 
 21
 Furthermore, the plaintiffs' argument fails because it assumes that the district court must determine the validity of a challenged statute before the court may base class distinctions upon the statute's provisions. On the contrary, as long as diverse groups of plaintiffs may advance differing arguments against the validity of a statute or the statute's provisions render it more vulnerable to attack by one group, the district court does not abuse its discretion by defining the groups as distinct classes despite the fact that all the plaintiffs may advance one common argument alleging the facial unconstitutionality of the statute.
 
 
 22
 Ill.Rev.Stat., ch. 85, § 9-104, envisions two distinct contingencies: one in which the governing body of a local public entity believes the unpaid balance of a tort judgment is not too great to be paid in the fiscal year following the fiscal year in which the judgment becomes final and the other in which the governing body believes undue hardship will arise if the entire unpaid amount is so paid. As to any unpaid judgment, as long as the fiscal year after the year in which the judgment became final has not expired, there remains the possibility of compliance with the statute by full payment or commencement of installment payment. After the expiration of such period, however, the statute no longer provides or implies any obstruction to entitlement to immediate payment. The specifications of the Evans and Balark classes recognize this difference in the position of a judgment holder depending on the age of his judgment. Despite the challenge to the statute's constitutionality, the district court did not err in using its provisions to place the plaintiffs in distinct classes.
 
 IV. The Defendants' Cross-Appeal
 
 23
 The defendants argue[9] that the district court erred: (1) in refusing to abstain; (2) in holding that they deprived the plaintiffs of property within the meaning of the Fourteenth Amendment; (3) in ordering immediate payment; (4) in holding Ill.Rev.Stat., ch. 85, § 9-104(b) unconstitutional; (5) in declaring the minimum procedural safeguards required before the City may constitutionally decide to pay judgments in ten annual installments; and (6) in holding the priority given judgments of $1,000 or less a denial of equal protection.
 
 A. Abstention
 
 24
 In a limited number of exceptional circumstances, the judicially created abstention doctrine properly may lead a federal court to decline to exercise its jurisdiction so that a state court or agency may decide an issue. The defendants argue that the district court erred by not abstaining under theories derived from Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 639 (1971) and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[10] We disagree.
 
 
 25
 The Evans suit began in November 1977; the Balark in May 1979. In June 1979, the defendants, who in the Evans case had already filed four motions to dismiss and two motions for summary judgment, filed motions which requested the district court to abstain in both cases. The motions called to the court's attention a state lawsuit, Nebel v. City of Chicago, 75 CH 700 (Cir. Ct. Cook Co. Ch.), which also challenged the City's practice of delaying payment of tort judgments. Nebel had filed suit on February 4, 1975. The Nebel suit was dismissed initially, but a September 27, 1977 Appellate Court decision established Nebel's right to proceed on behalf of the class of persons who held judgments against the City or its agents. Nebel v. City of Chicago, 53 Ill.App.3d 890, 11 Ill.Dec. 620, 369 N.E.2d 74 (1st Dist., 2d Div. 1977).
 
 
 26
 The district court, in an opinion dated July 9, 1979, denied the defendants' motion to abstain in Evans. In an opinion dated August 15, 1980, the district court applied its Evans ruling to the Balark case. Evans v. City of Chicago, 522 F.Supp. at 795-96.
 
 
 27
 On October 30, 1979, the state court certified the Nebel plaintiff class: "all unpaid tort judgment creditors of the defendant, THE CITY OF CHICAGO, as of the date of this order." Waters v. City of Chicago, 95 Ill.App.3d 919, 920, 51 Ill.Dec. 185, 420 N.E.2d 599 (1st Dist., 2d Div. 1981). On November 16, 1979, the parties in Nebel filed a stipulation regarding a proposed compromise. With minor modifications this stipulation forms the basis for the settlement of the state court case. The settlement provides: that the City allot $9 million in each of three annual budgets (1980, 1981, and 1982) to pay tort judgment creditors; that by January 1, 1983, the City will budget an amount sufficient to pay all outstanding tort judgments; that attorneys' fees be paid from those funds; and that a trustee administer the fund. On February 20, 1980, the Nebel court entered a final settlement order.
 
 
 28
 On January 28, 1981, the district court entered the judgment now here on appeal. On April 21, 1981, the Illinois Appellate Court vacated and remanded the Nebel settlement. The Appellate Court held that the trial court's approval of the settlement was an abuse of discretion because holders of judgments of less than $1,000 were assessed for the trustee's and attorney's fees without having received any benefit or a proper opt-out notice. Waters v. City of Chicago, 95 Ill.App.3d at 925, 51 Ill.Dec. 185, 420 N.E.2d 599. The state court plaintiffs and the City have revised the settlement so that no attorneys' or trustee's fees are assessed against holders of tort judgments which do not exceed $1,000. The Circuit Court of Cook County has approved the revised settlement.
 
 1. Younger Abstention
 
 29
 Although this litigation in the federal courts partially overlapped the litigation initiated by Nebel in the state court, it did not fall within the appropriate bounds for Younger abstention. The vast majority of the cases which Younger has spawned have abstained from injecting the federal judiciary into a state initiated adjudication pending in a state forum. See e.g., Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (request for declaratory relief against pending state prosecutions); Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (requested injunction against state Department of Human Resources' suit to affect a parent-child relationship). The exceptional Younger progeny which did not involve pending state initiated proceedings abstained from considering relief which would operate directly against a state court. See e.g., Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (attempt to enjoin state justices from using an allegedly unconstitutional law to impose contempt sanctions); Parker v. Turner, 626 F.2d 1, 6-10 (6th Cir. 1980) (declaratory and injunctive relief to ensure that a state juvenile court followed due process); Gresham Park Community Organization v. Howell, 652 F.2d 1227 (5th Cir. 1981) (attempt to enjoin enforcement of a state court injunction). See also Fair Assessment In Real Estate Association, Inc. v. McNary, 454 U.S. 100, 109, 102 S.Ct. 177, 182, 70 L.Ed.2d 271 (1981); Etlin v. Robb, --- U.S. ----, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982) (White, J., dissenting from denial of certiorari ).
 
 
 30
 The state court settlement did not resolve nor completely obviate any of the constitutional challenges. The failure of the state litigation to reach these questions did not result from any action of the federal judiciary.[11] None of the named plaintiffs in the federal litigation actively participated in the state litigation,[12] which was not instituted by the defendants. Nor was the goal of plaintiffs' suit federal relief which would operate directly against a state court. Under the circumstances Younger does not apply.
 
 2. Burford Abstention
 
 31
 Burford abstention is appropriate only if federal review of a difficult question of state law would disrupt state efforts to establish a coherent policy respecting a matter whose importance transcends the result in the case under consideration. Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); Ryan v. State Board of Elections, 661 F.2d 1130, 1135 (7th Cir. 1981). But no doctrine requires abstention merely because resolution of a federal question may invalidate a state statute or overturn a state policy. Zablocki v. Redhail, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678, 54 L.Ed.2d 618 (1978).
 
 
 32
 Colorado River Water Conservation District, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 indicates the limited scope of Burford abstention. In Colorado River, the United States sought a declaration of its federal and state law rights in certain Colorado rivers and streams. The Court recognized that probably "no problem of the Southwest section of the Nation is more critical than that of scarcity of water"; that Colorado had established an elaborate regulatory scheme for adjudication of water rights disputes; that the United States had utilized Colorado's scheme before, 424 U.S. at 804-806, 96 S.Ct. at 1239-1240; and that a federal adjudication of water rights might conflict with the State's allocation of water rights, 424 U.S. at 815-16, 96 S.Ct. at 1245. Nevertheless, the Court held the State's interests did not justify Burford abstention. 424 U.S. at 815, 96 S.Ct. at 1245.
 
 
 33
 Neither does this case.
 
 
 34
 The defendants characterize the regulation and enforcement of state court judgments and the management of municipal budgets as matters of transcendent importance regarding which Illinois has established coherent policies which federal litigation threatens to disrupt. Without denigrating the seriousness of the interests cited, we note several factors which weigh against Burford abstention. (1) None of the statutes requires the City to adopt the practices in question, and Ill.Rev.Stat., ch. 24, § 8-1-16 applies only to the City of Chicago and not to any other Illinois municipal corporation. See Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 747 (3d Cir. 1982), cert. denied, --- U.S. ----, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). (2) The statutes in question are not especially complex nor do they form part of a complex scheme. See Knudsen Corp. v. Nevada State Dairy Commission, 676 F.2d 374, 377 (9th Cir. 1982); Hanna v. Toner, 630 F.2d 442, 446 (6th Cir. 1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981). (3) Illinois has not created a public agency or special system of judicial review nor otherwise indicated that the matter in question requires specialized expertise. Knudsen Corp. v. Nevada State Dairy Commission, 676 F.2d at 377; Nasser v. City of Homewood, 671 F.2d 432, 440 (11th Cir. 1982); Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F.Supp. 1118, 1125-26 (W.D.Pa.1980). (4) The litigation involves the City's delay in paying federal as well as state court judgments.
 
 
 35
 We conclude that the issues in question do not fall within the area of a complex but coherent state policy. Therefore we approve the district court's refusal to abstain under Burford.
 
 
 36
 B. Deprivation of Property Within the Fourteenth Amendment
 
 
 37
 The defendants do not dispute that they committed the relevant conduct under color of state law. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Parratt v. Taylor, 451 U.S. 527, 535-36, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). They do dispute the other essential element of a § 1983 action: that the conduct deprived the plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. at 535, 101 S.Ct. at 1912. They specifically dispute the trial court's conclusion that they have deprived the plaintiffs of property within the meaning of the Fourteenth Amendment.
 
 
 38
 The Constitution does not create property interests. But property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law (,) ... that secure certain benefits, and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 39
 Recent Supreme Court cases emphasize that the hallmark of property "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' .... Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.' " Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).
 
 
 40
 Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification. Arnold & Murdock Co. v. Industrial Commission, 314 Ill. 251, 255; 145 N.E. 342 (1924). See Smolen v. Industrial Commissioner, 324 Ill. 32, 34-35, 154 N.E. 441 (1926). Illinois law does not allow holders of judgments against municipal corporations to collect by execution against the property of the municipal corporation. City of Chicago v. Hasley, 25 Ill. 595 (1861); Moore v. Town of Browning, 373 Ill. 583, 588, 27 N.E.2d 533 (1940). Nevertheless, Illinois recognizes that a city has no higher duty than to pay the judgments against it and that it has no discretion to depart from statutory methods of payment. People ex rel. Farwell v. Kelly, 367 Ill. 616, 618-19, 12 N.E.2d 612 (1937). Furthermore, Illinois acknowledges that the money awarded in an eminent domain proceeding is the condemnee's property even during the pendency of the condemnee's appeal, when, pursuant to statute, the county treasurer withholds it. Thus, although no statutory provision authorizes the payment of interest on eminent domain awards deposited with the county treasurer, the condemnee must receive whatever income such an award earns if invested by the treasurer. Morton Grove Park Dist. v. American National Bank, 78 Ill.2d 353, 362, 35 Ill.Dec. 767, 399 N.E.2d 1295 (1980).
 
 
 41
 Ill.Rev.Stat., ch. 85, § 9-102 empowers and directs a local public entity "to pay any tort judgment or settlement for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article."
 
 
 42
 In the event a local public entity does not pay a tort judgment during the fiscal year in which it becomes final, § 9-104 provides for two contingencies: one in which the governing body forms the opinion that the unpaid amount of the tort judgment is not too great to be paid out of the revenues for the ensuing fiscal year; the other in which the governing body forms the opinion that the unpaid amount is so great that undue hardship will arise if the entire amount is so paid. In the first contingency, § 9-104(a) directs the governing body to pay the balance of the judgment during the ensuing fiscal year. In the second, § 9-104(b) directs the governing body to pay the balance, with interest, in not more than ten annual installments.
 
 
 43
 Section 9-105 authorizes the boards of local taxing entities to issue bonds for the payment of any and all outstanding tort judgments and removes such bonds from all statutory limitations upon the amount of such entities' debt.
 
 
 44
 Section 9-106 directs local public entities that derive revenue for maintenance and operations from rates and charges for services or facilities to provide funds in each fiscal year to pay all their tort judgments.
 
 
 45
 Section 9-107 authorizes local public entities annually to levy or have levied on their behalf taxes sufficient to pay the cost of judgments under § 9-102, to pay the costs of and principal and interest on bonds issued under § 9-105, and to pay tort judgments under § 9-104 to the extent necessary to discharge such obligations. Section 9-107 exempts taxes for tort judgments from limitations upon both the amount of taxes the entities may levy for general purposes and the percentage of the assessed valuation upon which taxes are required to be extended for the entities.
 
 
 46
 Ill.Rev.Stat., ch. 74, § 3 mandates that judgments shall draw interest from the date of the judgment.
 
 
 47
 Property is more than mere ownership. It includes the right to acquire, use, enjoy, and dispose of acquisitions subject only to the law of the land. Morton Grove Park Dist. v. American National Bank, 78 Ill.2d at 362, 35 Ill.Dec. 767, 399 N.E.2d 1295. See Buchanan v. Warley, 245 U.S. 60, 74, 38 S.Ct. 16, 18, 62 L.Ed. 149 (1917). Only one Illinois statute, ch. 85, § 9-104(b), authorizes delay in the payment of tort judgments beyond the end of the fiscal year following the year the judgment became final. That statute specifies a procedure which the City admits it has not invoked.
 
 
 48
 Upon review of the relevant statutes and decisions, we agree with the district court that under Illinois law, if the City has not invoked § 9-104(b) before the end of the fiscal year following the year in which the tort judgment became final, the tort judgment holder may legitimately claim entitlement to immediate payment. Thus, at least in that situation, the right to immediate payment of a tort judgment against a municipal corporation becomes a property right under Illinois law.
 
 
 49
 Delay beyond that time although only a temporary and nonfinal withholding of the plaintiffs' property is a "deprivation" within the meaning of the Fourteenth Amendment.[13] Fuentes v. Shevin, 407 U.S. 67, 85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). The contrast between current market interest rates and the statutory rate on a judgment emphasizes the impact of delay.
 
 C. Due Process
 
 50
 The only possible justification for noncompliance with § 9-104(a) is a proposal, on account of undue hardship, to pay in ten installments under § 9-104(b). Since the City concedes it is not resorting to § 9-104(b), there is no justification for failure to comply with § 9-104(a), and thus nothing to be determined at a hearing. Although a hearing can be an element of due process, takings without any justification are "governmental actions that even if undertaken with a full panoply of procedural protection, are in and of themselves, antithetical to fundamental notions of due process." Parratt v. Taylor, 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring).
 
 
 51
 In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, the Court concluded that a prisoner suffered a deprivation of property within the meaning of the Fourteenth Amendment when a state employee negligently lost the prisoner's hobby kit. The Court, however, held that the State's tort claims procedure provided all the process due. The defendants maintain that under Parratt Illinois provides due process via a judicial procedure to which plaintiffs could resort to compel the City to comply with § 9-104(a).
 
 
 52
 This argument misses Parratt's point. In Parratt, the Court emphasized that it confronted "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S. at 541, 101 S.Ct. at 1915. Therefore, the Court found it difficult "to conceive of how the State could provide a meaningful hearing before the deprivation takes place." Id. Here, in contrast, the City has systematically deprived the plaintiffs of their State created right to immediate payment. Parratt does not reach such conduct. Logan v. Zimmerman Brush Co., 455 U.S. at 435, 102 S.Ct. at 1157.
 
 
 53
 Logan supports Justice Blackmun's view that the Parratt opinion has a narrow reach and does not "suggest that the provision of 'postdeprivation remedies,' ... within a state system would cure the unconstitutional nature of a state official's intentional act that deprives a person of property." Parratt v. Taylor, 451 U.S. at 545-46, 101 S.Ct. at 1918 (Blackmun, J., concurring).
 
 
 54
 Furthermore, the state remedies cited by the defendants[14] have never been used to obtain compensation for the City's use of judgment holder's property during the time the City withheld payment without statutory authorization. See Bonner v. Coughlin, 517 F.2d 1311, 1319 (7th Cir. 1975), modified in banc, 545 F.2d 565 (1976), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). We do not understand that Parratt remits the victims of a deliberate municipal policy to a speculative remedy. See Logan v. Zimmerman Brush Co., 455 U.S. at 435, 102 S.Ct. at 1157.[15]
 
 D. Ill.Rev.Stat., ch. 85, § 9-104(b)
 
 55
 The record discloses that the governing body of the City never determined that undue hardship would arise if the entire amount of unpaid judgments were paid out of revenues for the fiscal year following the fiscal year in which the judgments became final. Furthermore, the City never subjected the named plaintiffs or any class member to the installment plan method of payment permitted by Ill.Rev.Stat., ch. 85, § 9-104(b). Nor did the City ever tell the named plaintiffs or any class member that it would implement such a plan. Thus the plaintiffs had no standing to attack the constitutionality of that provision. Blum v. Yaretsky, --- U.S. ----, ----, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982); Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). Because the district court improperly reached this issue, we vacate paragraph four of the district court's January 28, 1981 order, which declared Ill.Rev.Stat., ch. 85, § 9-104(b) unconstitutional and set forth the minimum procedural safeguards that due process requires before the City may decide to pay a judgment in installments over ten years. In vacating this portion of the court's order, we, of course, express no opinion about the constitutionality of the statute or the appropriateness of the order's procedural safeguards.
 
 E. Equal Protection
 
 56
 In holding unconstitutional the City's practice[16] of paying tort judgments of $1,000 or less immediately while delaying payment of larger tort judgments for several years, the district court applied the equal protection analysis set forth in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Under that analysis, in economic matters a nonsuspect classification created by statute will survive a constitutional challenge if the classification relates to a legitimate state purpose. Both sides agree that this standard controls.
 
 
 57
 The defendants contend that the City's practice of paying tort judgments of $1,000 or less before tort judgments in excess of $1,000 related rationally to the City's attempt to reduce litigation and interest costs by encouraging quick settlements for $1,000 or less without interest in a large amount of nuisance litigation. The explanation does not survive examination for two reasons. First, the City's practice included immediate payment of fully litigated claims which resulted in judgments of $1,000 or less. Second, the practice did not reduce interest costs since interest accumulated on the sum of the unpaid judgments. The priority given smaller judgments did not reduce that total. Nor does the payment of many small judgments before an equal amount due on large judgments allow the City more effectively to manage its yearly appropriations and limit the City's debt. We discern no rational basis for the City's challenged classification.[17] See Zobel v. Williams, --- U.S. ----, ----, 102 S.Ct. 2309, 2311, 72 L.Ed.2d 672 (1982). The district court correctly held the practice and Ill.Rev.Stat., ch. 24, § 8-1-16, insofar as the statute incorporates the practice, unconstitutional.
 
 V. Conclusion
 
 58
 For the foregoing reasons the district court's judgment, with the exception of paragraph four is Affirmed.[18] Paragraph four is Vacated.
 
 
 59
 The parties shall bear their own costs of appeal.
 
 
 60
 DANIEL HOLCOMBE THOMAS, Senior District Judge, dissenting.
 
 
 61
 I respectfully dissent in part to the majority opinion. I feel that the question of the constitutionality of both 104(a) and (b) was squarely before the district court and there was error for the district court not to rule on both. Even though the district court did not certify his ruling under Rule 54(b), I think it should have been so certified and it is before this court. I would hold both 104(a) and (b) unconstitutional and concur in the rest of the majority opinion.
 
 
 
 *
 Senior District Judge Daniel Holcombe Thomas of the Southern District of Alabama sitting by designation
 
 
 [1]
 The challenged statutes are Ill.Rev.Stat., ch. 24, § 8-1-16 and ch. 85, § 9-104. Ill.Rev.Stat., ch. 24, § 8-1-16 provides:
 In any municipality with a population of 500,000 or more the corporate authorities may levy a tax annually upon all the taxable property in the municipality at a rate that will produce not to exceed $4,500,000 upon the valuation to be ascertained by the assessment of such property for purposes of taxation for the year in which each such levy is made. This tax, if levied, shall be for the purpose of paying judgments entered against the municipality prior to January 1, 1941, and tort judgments and judgments for damage to or for the taking of private property for public use entered after January 1, 1941. This tax shall be levied and collected in the same manner as the general taxes of the municipality. It shall be known as the judgment tax and shall be in addition to the maximum of all other taxes which the municipality is now, or may be hereafter, authorized by law to levy upon the aggregate valuation of all taxable property within the municipality.
 All money received from this tax shall be set apart in a separate fund and shall be used solely for the purpose of paying judgments as provided for in this section. Judgments against the municipality shall be paid out of this fund in the order in which the judgments were obtained. This order of payment shall not apply to judgments of $1,000 or less, which judgments may be paid out of said order and in the order in which these judgments of $1,000 or less were obtained.
 Interest accrued on these judgments shall be paid with the principal thereof. However, the interest accrued to any particular date on all judgments payable out of this fund may be paid ratably at any time without payment of the principal thereof. Warrants issued in anticipation of the judgment tax under the provisions of Sections 8-1-11 and 8-1-12 shall bear interest at a rate not to exceed 7% per annum."
 Ill.Rev.Stat., ch. 85, § 9-104 provides:
 (a) If a local public entity does not pay a tort judgment or settlement during the fiscal year in which it becomes final and if, in the opinion of its governing body, the unpaid amount of the tort judgment is not too great to be paid out of revenues for the ensuing fiscal year, the governing body shall pay the balance of the judgment during the ensuing fiscal year.
 (b) If the local public entity does not pay the tort judgment or settlement during the fiscal year when it becomes final and its governing body is of the opinion that the unpaid amount of the judgment or settlement is so great that undue hardship will arise if the entire amount is paid out of the revenues for the ensuing fiscal year, the governing body shall pay the judgment or settlement, with interest thereon, in not more than 10 annual installments. Each payment shall be of an equal portion of the principal of the tort judgment or settlement. The governing body, in its discretion, may prepay any one or more installments or any part of an installment.
 
 
 [2]
 The City reduces to judgments all settlements in tort cases where suits have been filed against it. The City characterizes judgments in federal civil rights suits as tort judgments. This opinion adopts the City's characterization
 
 
 [3]
 Some confusion persists as to whether the City pays judgments which exceed $1,000 in the order of entry by the court or in the order of entry into the Comptroller's "Judgment Record." The defendants do not contend that this confusion concerns a material fact
 
 
 [4]
 We employ the plaintiffs' attorneys' representation to the trial court that 80% of the original holders of tort judgments assigned the judgments. (Tr. 10/15/80 at 8.) The defendants assert that up until 1979 discounters purchased 85 to 90% of the tort judgments against the City. We do not find the percentage of assignees relevant to our disposition
 
 
 [5]
 Prior to October 1, 1977, money judgments drew 6% interest per year. From then until January 1, 1980, judgments against the City and other governmental entities drew interest at 6% but other judgments drew 8%. Since January 1, 1980, judgments against non-governmental entities draw 9%. See Ill.Rev.Stat., ch. 74, § 3, repealed and recodified, 1981 Ill. Laws 82-280 §§ 19B-101 and 2-1303. See also 1979 Ill. Laws 81-874 § 1; 1977 Ill.Laws 80-722 § 1 and 80-914 § 1
 When the City, pursuant to Ill.Rev.Stat., ch. 85, § 9-102 pays judgments incurred by its employees acting within the scope of its employment, it apparently pays 6% interest.
 
 
 [6]
 The Evans class was defined in a January 2, 1980 Order of Court to include:
 All persons in whose favor a final tort judgment in excess of $1,000.00 against the City of Chicago has been or will have been entered commencing with the fiscal year 1972 and continuing to the date of the entry of final judgment in this case and payment of whose judgment is overdue by reason of the failure of the City of Chicago (a) to pay the judgment in full in the fiscal year it was entered or in full during the ensuing fiscal year in accordance with Ill.Rev.Stat., ch. 85, § 9-104(a); or (b) to commence timely payment of installments on the judgment pursuant to Ill.Rev.Stat., ch. 85, § 9-104(b) no later than the end of the first fiscal year following entry of judgment. The class shall not include assignees or purchasers of judgments nor those persons who assigned, factored or "discounted" their judgments prior to full or partial payment by the City of Chicago.
 Evans v. City of Chicago, 522 F.Supp. 789, 803 (N.D.Ill.1980).
 
 
 [7]
 The Balark class was defined in the August 15, 1980 Memorandum Opinion of the Court to include:
 All persons in whose favor a final tort judgment in excess of $1,000.00 against the City of Chicago has been or will have been entered commencing with fiscal year 1974 who have held their judgments without full satisfaction thereof for a period not greater than the end of the fiscal year following the year in which the judgment was obtained.
 
 
 [522]
 F.Supp. at 810
 
 
 [8]
 On February 2, 1981, subsequent to the filing of this appeal, the district court, in response to a motion by the plaintiffs for summary judgment on the issue of immediate payment, denied requests (1) to declare Ill.Rev.Stat., ch. 85, § 9-104(a) unconstitutional on its face; (2) to require the City to make immediate payment of all tort judgments which were older than thirty (30) days and had been entered against it during the 1980 fiscal year; and (3) to require the City to pay immediately assignees of all unpaid tort judgments. The district court did not approve 28 U.S.C. § 1292(b) or Fed.R.Civ.P. 54(b) certification for any of its February 2 rulings
 
 
 [9]
 At oral argument the defendants abandoned their assertion that the plaintiffs had made knowing and intelligent waivers of their due process rights
 
 
 [10]
 The defendants do not contest the district court's rejection of abstention based on Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [11]
 On February 28, 1980, after the Circuit Court of Cook County entered the settlement order, the district court, after a hearing at which the trustee appointed by the state court appeared as a friend of the court, entered an order temporarily restraining the City from paying any tort judgment in excess of $1,000 and from deducting any attorneys' fees from any such judgment. On March 5, the district court dissolved the temporary restraining order. In considering the abstention question, we need not decide whether the district court acted properly in issuing the temporary restraining order, for the order did not ultimately deflect the state proceedings from their course
 
 
 [12]
 At oral argument counsel informed us that Evans opted out of the state class and that the Balarks did not. The state court denied a motion by Evans' attorney to exclude the Evans class from the Nebel settlement. The City did not base a res judicata defense upon the settlement, see Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), or argue that the district court should have modified the federal classes to avoid any overlap with those defined by the state court. The state litigation did not seek and has not resulted in all the relief the federal plaintiffs seek. As of January 1982, the City had reduced its backlog but remained 26 months behind
 
 
 [13]
 The property interest in immediate payment created by Illinois law distinguishes this case from Louisiana ex rel. Folsom v. Mayor of New Orleans, 109 U.S. 285, 289, 3 S.Ct. 211, 214, 27 L.Ed. 936 (1883). In Louisiana ex rel. Folsom, the judgment holder apparently only claimed a property interest in the judgments themselves and in the prior, less restrictive limitation upon the taxing power of New Orleans. At least those are the only asserted deprivations which the Court discussed. The Court did not indicate that Louisiana had established a right to immediate payment of the judgment in question
 If one reads Louisiana ex rel. Folsom as applying to state created property interests in immediate payment of judgments, it appears inconsistent with the application of the due process clause to temporary nonfinal deprivations in Fuentes v. Shevin, 407 U.S. 67, 85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969).
 Furthermore, the City directly deprived the plaintiffs of an unqualified right created by Illinois law whereas the 1879 Louisiana Constitution allowed other provisions for the satisfaction of judgments.
 
 
 [14]
 The defendants cite three state remedies: (a) a common law action for immediate payment of a tort judgment; (b) a writ of mandamus; and (c) wage garnishments against individuals also bound by the judgments against the City. The City does not characterize its seizure as an exercise of eminent domain. Even if eminent domain applies to what is essentially a seizure of cash and equal protection analysis tolerates the City's method of selecting those from whom it seizes property that is fungible with that possessed by a much larger class, just compensation would be due in an amount which could not be less than the judgments the district court ordered paid immediately
 
 
 [15]
 Flower Cab Co. v. Petitte, 685 F.2d 192 (7th Cir. 1982), is a decision of this court granting a stay of a mandatory injunction, pending appeal. Flower Cab considered it probable that under the principle of Parratt, the availability of mandamus by a state court to compel a ministerial act will fulfill the requirement of due process. In any event, the Flower Cab pronouncement was tentative, in the context of a stay pending appeal, and the fact situation presented there was distinctly different from that which is before us here
 
 
 [16]
 Neither side disputes the trial court's view that the City's practice of giving priority to judgments of $1,000 or less did not originate in Ill.Rev.Stat., ch. 24, § 8-1-16. Evans v. City of Chicago, 522 F.Supp. at 801. That statute allows the City to levy a limited judgment tax in addition to the maximum of all other authorized taxes and exempts judgments of $1,000 or less from its requirement that judgments the City pays out of the separate fund received from that tax be paid in the order the judgments were obtained. But Ill.Rev.Stat., ch. 85, § 9-105 to § 9-107 removes payments of tort judgments from all statutory taxation and debt limitations. Therefore the more limited relaxation of the statutory limitations permitted by Ill.Rev.Stat., ch. 24, § 8-1-16, along with the accompanying requirements and exemptions no longer applies to the City's tort judgment payment practices
 
 
 [17]
 The plaintiffs allege that the pressure the City's practice puts on claimants to settle for $1,000 or less because of the time the City takes to pay larger judgments is the only way in which the practice can limit the City's debt. The City does not assert and we do not believe that a rational basis for the City's disparate treatment of the two classes of tort judgment holders may be found in the possibility that the City might exploit the willingness of those adversely affected by an arbitrary classification to sacrifice part of their claims in order to escape the undue delay the City imposes upon the class it disfavors
 
 
 [18]
 Section 9-104(a), in limiting the time within which a judgment must be paid, classifies judgments according to the fiscal year in which the judgment becomes final. Presumably finality is achieved when the time for appeal expires without an appeal, or when appellate proceedings have been completed
 The district court defined the Evans class in terms of the fiscal year in which a judgment was entered. Unless "entered" is taken to mean entry into the Comptroller's "Judgment Record" immediately upon becoming final, see note 3, it is likely that there are judgments entered in one fiscal year which do not become final until the following fiscal year, and where an appeal has been taken, the disparity may be greater. The parties have not made any issue over the possible difference between requiring payment at or before the end of the fiscal year following the fiscal year of entry of judgment and requiring payment at or before the end of the fiscal year following the fiscal year in which the judgment became final. Although we affirm the judgment, the district court is given leave to adjust it to be consistent with § 9-104 should the defendant seek that change.
 Furthermore, the district court's judgment does not unambiguously incorporate the court's intent that the judgment act prospectively to require immediate payment to present members of the Balark class at the time they move into the Evans class. Should a party seek to clarify this aspect of the judgment, the district court may do so.